16-1059, Association of Oil Pipes, Oil Pipe Lines, Petitioner v. FEDERAL ENERGY REGULATION COMMISSION, et al. Mr. Reed for the petitioner, Mrs. Chu for the respondent. Petitioner v. FEDERAL ENERGY REGULATION COMMISSION, et al. Good morning. Good morning, Your Honor. Good morning to the court. I'm Steve Reed, and I'm appearing on behalf of the petitioner, the Association of Oil Pipelines. This is the fourth time this court has had occasion to address the FERC's establishment and review of its index methodology for setting oil pipeline rates. Prior to the order under review now, the commission, with some guidance from this court, has established a stable set of principles for setting the index that has been referred to below as the CON methodology. In the 2015 order at issue here, FERC departed from those principles in two significant ways, without either acknowledging its significant change of policy or providing a reasoned explanation for those changes. The two key errors here are, first, the exclusion of the middle 80 percent of the data on industry cost changes in calculating the index, and the second is the redefinition by the commission of the costs that the index is attempting to measure from actual industry cost changes to so-called recoverable cost of service data. Together, these two errors resulted in about a 50 percent lower adder to the index than one calculated under the neutral principles the commission had previously espoused. I'd like to start by talking about... You started off by saying that I thought that FERC didn't acknowledge the changes. Yes, Your Honor. I thought FERC did acknowledge the changes in its order. We don't believe so, Your Honor, and let me talk about why we say that. What FERC said with respect to the middle 50, middle 80, was that they had always intended to measure normal costs, normal cost changes in the industry, and that is what they said when they first set up the index in 1995. They talked about that. But subsequent to that 1995 decision in which they talk about the goal being to measure normal cost changes, the commission did adopt an index that was based on the middle 50 and the middle 80. They used it in 2003 on remand from this court. They used it again in 2006 in their second index review, and in 2006 they specifically defended the middle 50, middle 80 model as an effective way to, quote, unquote, exclude outliers, statistical outliers. But not as an exclusively effective way. That's correct, Your Honor. They've been inconsistent, and they've justified it on each occasion. They've never said that it has to be both. It's correct, Your Honor. They've never said it has to be both, but they did say very explicitly in 2006 that the middle 50, middle 80 was an effective way of excluding statistical outliers. That's not to say the opposite. Well, I understand, Your Honor, but let's follow the history through. Now we come to the 2015 order. In 2010 the commission toyed with middle 50, middle 80. They said, well, we've looked at the middle 50 and middle 80 in the past. We've been a little inconsistent, but in this case we don't really have to consider them. It's unnecessary to use the middle 80 because the middle 50 gives us a very robust statistical sample with 76% of the industry barrel miles. Seventy-six is pretty close to 80. So the decision in 2010 was the commission simply saying we can decline to use the middle 80 where we recognize that the middle 50 is providing us a robust sample. In 2015 the commission said something very different. Now they're saying the middle 80 is inherently flawed because by definition some of the companies in the middle 80 are going to be further from the median than the companies that are in the middle 50 set. If there was an inherent flaw in the middle 80 that the mere fact that some of the companies would be further from the median disqualified the middle 80 from being used, that should have been apparent in 2000. They don't say inherent. They don't say inherent flaw. Well, they don't say it's inherent, but it is inherent, Your Honor, as a practical matter. That's a critical portion of your argument. I had the same question my colleague did. I don't remember them saying it's inherently flawed. They didn't use the word inherent, Your Honor, but the flaw they've identified, they specifically talk about is the data in the middle 80 is by definition further from the median than the data in the middle 50. That's what they say is their decision. The data in this case, in their view, did not satisfy what they felt the requirement should be. I mean, that's what they've done all the way through the history, as I read all of these cases. That's what they've been doing is assessing it in each of these periods to determine which of these databases makes sense. Well, I understand, Your Honor. That's what the Commission is presenting its decision as, and that's our point about why they're not acknowledging the change. The change is to go from a, you know, every period we analyze, whether the middle 50 and the middle 80 work for this particular period. That's what they've done since 2003 to now they're saying there is a flaw in the middle 80 that prevents us from using it, and that flaw is incurable. I mean, the middle 80 is always going to have some data in it that's further from the median than the middle 50, but if that was the issue, the Commission would have had an issue with it in their prior cases. They haven't explained why it's different now in 2015, why it's any more a problem that those costs are necessarily more dispersed than it was in their prior cases. Put aside for a moment the question of change for a moment, and I know that's a big part of your argument, but just for the moment. And what is substantively or otherwise unreasonable about using the 50 rather than the 80? I think what's substantively questionable, Your Honor, is we're trying, the Commission has said from the outset, we're trying to measure industry-wide cost changes. The middle 50 in this case only contained 56 percent of the industry data, the barrel miles that were moved. That's not a particularly robust sample, despite what the Commission says. It's certainly not the kind of sample they've looked for before. They've said in their cases before, more data, if it's accurate, is better. They said they were specifically in the 2011 rehearing order rejected a proposal from the shippers that would have only included 58 percent of the barrel miles in the sample as not good enough. But this really gets to what is our role here, which is how can we draw a line based on barrel miles that are covered when they make an argument, again, put aside the change, that the middle 50 is going to be a better evaluation, avoid more of the outliers. How can we second-guess that, or how can we draw a line based on the barrel miles, do you think? Well, Your Honor, I don't think we're asking to draw a bright line on barrel miles. What we're saying is the Commission has an unexplained inconsistency, to borrow a phrase from the Brandeis decision. Well, that's the change again, and so you're back to the change, and I understand why you're on that. And the change really is the heart of our argument, Your Honor, that the Commission has in the past said two very important things, two principles they apply here. They said in 2006 the middle 50, middle 80 is a good way, an effective way of excluding outliers, and they said more recently that they want more data if it's accurate. They haven't questioned the accuracy of the data in the middle 80 in this case. You keep using the phrase, and I understand why, reasoned explanation, but is there a possibility of a reasoned explanation to get to the 50? Well, in 2010 they gave, I think, a plausible explanation of why they were only using the middle 50. They said, well, it contains a very broad sample, 76% of the barrel miles. We weren't going to quibble about the difference between 76 and 80, but now we're talking about the difference between 56%, which is barely more than half of the industry, and 80% when there's no question that the data, there's no question that's been raised by the Commission about the data in the middle 80 being inaccurate. In fact, the Commission recognized that the statistical distribution of the data in the middle 80 was a predictable statistical path and said that generally supports the idea this is accurate data. It's not erratic. It's not bouncing all over the place. This is complex. In 1994 and in 2010, they rested on the middle 50, and they never suggested as far as I can see along the way up to now that they were obliged or thought they would be obliged to consider both and measure it that way, and in this case they specifically said the middle 50 more effectively than the middle 80 percentage excludes pipelines with anomalous cost changes, and that appears to support that conclusion. Why would we second-guess that? Your Honor, again, I think it goes to the change. They're now saying something that's the polar opposite. But that's what I'm asking. I'm going to bite on your change argument, okay, because I don't see it. They started in 1994 with middle 50 being the point of observation. They did it again in 2010, and along the way middle 50 was always in play, and they never said that middle 50 was out of play. But they have done middle 50 alone in the past, in 1994 and in 2010. Your Honor, again, I think, though, this goes to the question of the reasoned explanation, as Judge Kavanaugh brought up. Well, then we're fighting on whether or not they have satisfied us. They've explained why they were using only the middle 50. That is the issue precisely, Your Honor. And what we say is in 1995 they only had the middle 50 before them. No one presented the middle 80. And the reason the expert gave for that was that the data in 1995 was very poor. It varied radically. There were a lot of outliers. By 2003, when they established the 50-80 approach, they had a much better data source. Everybody acknowledged that the errors that had existed in 1995 no longer were so prevalent. And at that point they made a very specific determination that the middle 50, middle 80, was an effective way to exclude those statistical outliers. An effective way. Yes. But they've not explained, in this case, why if it was effective in 2006, what's different today. They haven't said the data is more inaccurate. They've pretty much acknowledged it is accurate. At least that's what I was reading. Now, you may say they really didn't, but I thought they explained pretty carefully at some length that the outliers were obvious here and would impair the analysis if you used middle 80. Well, two points on that, Your Honor. First of all, their explanation for why they say there are statistical outliers in the middle 80 that are not in the middle 50 was simply that they're further from the median. Again, if that was their rationale, that would have applied equally in 2003 and 2006. They haven't explained what's different about that. The second thing they said is, well, the shippers came in and pointed out a lot of anomalies in the data. But the Commission, in the earlier part of its decision, didn't buy into the shippers' point that that was anomalous data. And, in fact, they pointed out that those supposed anomalies are spread throughout the sample, not only in the middle 80, but there are many of those examples in the middle 50. So, again, they haven't provided a neutral principle for saying, why are we now backing off of our earlier thought that middle 80 is a good sample because it has more data that is accurate in any kind of sample, and you want more data. So your point is that their prior decisions have effectively, in effect, set up a principle that the middle 80 should be used unless there's some special reason not to use it. Correct, Your Honor, that there's no reason not to use the middle 80 unless there's something wrong with that sample or something about the middle 50, as in 2010, that made it a more usable sample. And where did they ever say that? They've done it by their conduct, I would say, by what they have done. I never said that. I did it as much as I hated having to do it. If I can honestly say that. I did read these things. God bless you, Your Honor. My wife said, why can't we go out to dinner? Well, I have to leave for work. Honestly, I can't find that statement anywhere. Well, I would point to the 2006 order, Your Honor, where the issue was raised specifically of whether the shippers had presented a methodology that they argued did exclude outliers. It included more of the data than the middle 50, middle 80. And the Commission said the Commission should not abandon its current methodology because the evidence of existence and proper treatment of outlier data were extensively addressed in prior Commission proceedings, and the current methodology was specifically designed to take this matter into account. The Commission uses the middle 50% and 80% of the relevant cost data, thus ensuring that the index is not driven by statistical outliers. That was a specific fact finding, and now the Commission is saying the exact opposite thing, which is that necessarily the middle 80 is driven by statistical outliers because it's further from the median. It contains data that's further from the median, and we don't think those two findings can be reconciled sub salientio. The Commission needs to explain why was that principle clear in 2006 and suddenly one to be disregarded in 2015. They could have made presumably specific fact findings about the middle 80 and middle 50 and said there's something wrong with this database, we don't want to use it, but they specifically did not do that. They did not find it to be inaccurate. They didn't even buy into the shippers' argument that there were specific anomalies in it. They simply said it's too spread out. And in saying it's too spread out, that leads to our concern that what's really going on here is they're saying because it's so dispersed, it's going to lead to a higher index. And, indeed, they specifically talked about this upward. So you see the current opinion as, in effect, saying we're going to use the middle 50 unless there's some special reason not to use the middle 50. That's probably a good way of putting it, Your Honor, that they've kind of shifted the presumption from what they had in 2006 that the model was 50-80 and there needed to be a good reason to use 50 to one where they're saying we're almost never going to use the middle 80. And inherently so. I use that word because it's a property of the distribution of the data. There's no one figure around it. Where is the language in the 2000 opinion that acknowledges in 2006 there's a firm rule and we are now going to take exception to that rule? They state the rule and then they move and say we should approach it differently here, even though we understand there's a strong presumption of what? I missed it. Well, Your Honor, I think the Commission says in its opinion that they had never ruled on this before. They simply disregard the evidence of what was in the 2006 order because they say in their opinion, we used 50-80 in the past but we never really addressed it and we never really thought much about it. Well, it's right in their opinion. They didn't think about it. They didn't make a specific finding. What are you talking about now? Well, in the 2010 and the 2015 orders, they basically said. No, but what I'm saying is if 2006 was a firm principle as you argue, then why did the Commission miss it in 2010? It was a firm principle with respect to which they should have stated it and they should have said now we're going to have an exception here because whatever. Well, I think in that case, they did give a plausible explanation for why they were using the middle 50, which was the coverage in terms of barrel models. That's what they rested their decision on. I understand that part of it and I understand. They haven't said anything like that here. No, but what I'm saying is they did not say in 2010 what you're saying, that there is a cardinal rule to be followed unless. And you've tried to, I'm not sure what you're trying to do. You're trying to make 2006 more than I read it to be and 2010 would have been the place where the Commission would have acknowledged what you're saying and said they're going to write it differently even though there was a firm rule. Well, Your Honor, we didn't appeal the 2010 order but clearly we would have had the same objection had the Commission said in 2010 we're ruling out using the middle 80. All they said in that case was it's unnecessary on these specific facts to use the middle 80. They didn't say or imply that they were never going to use it again. And here in 2015 for the first time we're getting a decision saying there's an inherent flaw, there's this basic mathematical flaw in the middle 80 that we can't use it, and that is a real reversal from what they said in 2006. And they not only haven't explained it, they haven't even acknowledged that it's a reversal from what they said in 2006. And that's our central point. I see that my time has expired and I would like to reserve a few moments for rebuttal. Okay, thank you. Good morning, Your Honors. Good morning. Susanna Chu for the Commission. The Oil Pipeline Index administered by the Commission is designed to accommodate ordinary pipeline cost changes. It's not disputed that pipeline cost experiences diverge dramatically. Looking at a pipeline cost change, it's very possible for a pipeline undergoing a major expansion to have cost changes in the billions of dollars. So that's why these statistical outliers are excluded from the pipeline index. The whole point is just to capture the central tendency of the data, which was recognized by the court in the original 1996 Association of Oil Pipelines decision. Doesn't the 80 exclude the outliers? No, not in this case. So from what I'm hearing from counsel, there is no, as Judge Edwards was observing, there is no decision by the Commission in 2006 that the middle 50 and middle 80 were That wasn't my question. My question was, doesn't the middle 80 exclude the outliers? No, Your Honor, not in this case. What do you mean by not in this case? Why are you limiting it to this case? So it's both not in this case and also in general. And it's explained in the order of paragraph 43, but also in the footnotes to page to paragraph 43, which provide the basis for the Commission's finding. So that seems, what you just said, like a general principle that the 80 doesn't sufficiently exclude the outliers. And their point is that that's new and that hasn't been sufficiently elaborated upon. And it's not new, Your Honor. 2006, it wasn't really an issue. Both parties in 2006, both the shippers I'm sorry to interrupt. You've used the 80, the Commission has used the 80 in the past, correct? Yes, it has. And in general, it's been uncontested. It hasn't made a major difference. But presumably when the Commission used it in the past, it thought it did a suitable job of excluding the outliers while also measuring appropriately. But now what you just said is that the 80 does not do a great job of excluding the outliers. And their point is, and as you can tell by the questions to opposing counsel, they have difficult questions to face too. But their point is that that's a change or new or both. Right. That's because they're reaching back to the 2006 order and ignoring the 2010 order. The index order immediately preceding this review in which the Commission said that the middle, including the middle 80 results in including more statistical outliers in the calculation of the index. And for that reason, using only the middle 50 is the most appropriate method of trimming the data and getting only ordinary pipeline cost changes. But they say that that was due to special circumstances explained by the Commission in that order. Whereas here, instead of identifying something special about what's going on in the market now, that it's just a default rule is probably too strong, but presumption that the 50 is the right thing, the 80 is not the right measurement, and that's the way it's going to be going forward. I heard that argument. It's not just the presumption, Your Honor. In paragraph 42 and 43, JA-771, the Commission cites back to its 2010 index review and talks about how in that review the Commission found that the middle 50% more effectively than the middle 80% excludes pipelines with anomalous cost changes. And then immediately after that, in paragraph 43, the Commission says that the record in this proceeding does not provide a basis for altering that position. And I think what they would say in response is that that is a rewriting of what was said in 2010. Neil, Your Honor, actually, if you flip over to JA-772, what we see here is in paragraph 44 and footnotes 83 and 85, the Commission is explaining why it's appropriate to use the middle 50 here, and that is because first, the middle 50 is a representative, robust sample of the central tendency of the pipelines in this case, that's at footnote 85, where the agency says, it is not the case that the middle 50% represents a narrow or selective sector of the industry. And later in the same paragraph, we explain that although the barrel miles represented in this particular review represent about 56% of industry barrel miles, well, first of all, that's not a narrow or selective sector of industry. We've used even fewer barrel miles in the past. But also, the difference between the 56% of barrel miles here and the 70-something percent in the last review is attributable to a single oil pipeline, Enbridge-Lakehead, which was in the middle 50 in the last review, but not in the middle 50 in the current review. So in that footnote 83, though, there does seem to say why the middle 80 is specifically incorrect or not suitable in that case. Now, in your favor, in the text of the order, it does make a general comment, pipelines in the middle 80 are more likely to have outlying cost changes. So I guess that's the general principle that you would say they're referring back to, but the footnote 83 does seem to refer to specifics that make the middle 80 inappropriate there. That's right, Your Honor. And I guess what they would say is you don't have those specifics here. We do, Your Honor. And just to back up a little bit, the two proposals that were before the agency, the one we're most familiar with is the association's proposal to use both the middle 50 and the middle 80. Then on the other hand, we had shipper proposals to manually trim pipeline data, which means that under the shipper proposal, the commission would be looking at the particular circumstances of individual pipelines and taking them out. Can you point? I might have been quite on the wrong page. You referred us back to the 2010, right? I think she's talking about the 2015 order, right? Okay, 2015 order, okay. Note 83, because that was my question. If note 83 deals with specifics here, then your point is that in the 2015 order, the commission did both the general and the specific. It generally pointed out that 80% incorporates outliers, and then it specifically pointed out that in the specific data set used for purposes of this five-year period, it shrews the point. Yes, Your Honor. And I'm sorry, it's both footnotes 83 and 85. Right, in this order. This order on review, I apologize. They are saying that when you go back, sorry, I have two different orders here, that when you refer to the 2010 order, you're misdescribing the 2010 order. That was my question that I asked. Oh, okay, I'm sorry. The 2010 order. The 2010 index review. Right, provides a rationale for why it's appropriate to use the middle 50 alone, and it explains, it provides a nice summary because it says, this is paragraph 61 of the 2010 order, even when accurate data is reported, pipelines in the middle 80, as opposed to the middle 50, are more likely to have cost changes resulting from factors particular to that pipeline, such as a rate-based expansion, plant retirement, or localized changes in supply and demand. So I'm saying that... So your argument is that even... Sorry, just to make sure I'm on the right thing. Paragraph 61, right? Of the 2010 order. Yeah, okay, I'm on it. Go ahead, Judge Shrinvastava. So your point is that in paragraph 42 of the 2015 order, there's a characterization of the 2010 order. And the characterization is that the 2010 order generally understood that using an 80% figure is problematic because it includes too many outliers. Your opposing side would respond, no, really what was going on in 2010 is that it dealt with specifics as to that data set. And your point is that, no, when we refer back to 2010 and we described it as a general matter, if you look at paragraph 61, we were actually right in describing it as a general matter, that in fact 2010 incorporated this general view that the 80% figure is too wide because it has an undue capacity to introduce outliers. That's right, Your Honor. And based on our review of the record in this proceeding, there's no reason to depart from the 2010 order. If I may, it made sense... And the 2010 order went on, and just picking up, in paragraph 62 and 63 to do what, as Judge Shrinvastava says, to do the specific problems with using the 80 there. And you're saying that they're doing the same here. Right. There's a general presumption that the 50 is going to be better. And, by the way, in both 2010 and here, we've pointed out problems with the 80. That's what you're saying. Born out in the specifics. Born out in paragraphs 62 and 63, 61 through 63 then, and in paragraphs... Footnotes 83 and 85. Footnotes 83 and 85 now. Yes, that's right, Your Honor. And it is born out in the 2015 review. And, in addition, it may be helpful to take a look at the discussion in the section that addresses the shipper's manual data trimming. Because it's at paragraph 34, for example, JA 764. That's where some of the problems with these outlying pipelines is discussed. And at footnotes 60 and 61, we see that by using the middle 50, we take care of the problems introduced by using some of these idiosyncratic pipelines that appear in the middle 80. So the commission is realizing that between these proposals of using a composite of the middle 50 and 80 and the proposal of looking at individual pipelines, by just using the middle 50, we end up with a methodology that's objective and transparent and doesn't require individual looks at pipelines for why their data is idiosyncratic. If I may, to the extent it may be helpful, JA 54 has a chart. This is a chart appearing in the testimony of the associations expert. And this chart... What does that chart tell me? I need a translation. It's obvious. Yes, just looking at that chart, it's magical. I studied that one. Yes, that's... Okay. Okay, what does this mean? Figure 2. It may be helpful to take a look at it. If you take a look at figure 2, you'll see that these data points represent different pipelines. And you'll see that there's a much larger grouping within this lighter-colored band, which represents the middle 80. And you see when you go beyond... Excuse me, the middle 50. You'll see that when you go beyond the middle 50 to the middle 80 that you're seeing more dispersion in the costs, which bears out the commission's conclusion that the middle 80 includes more idiosyncratic cost experiences. Yes, that seems like it's almost mathematically guaranteed to be true because any time you expand the frontier, you're going to have a greater capacity at least to sweep in idiosyncrasies. Right, that's right, Your Honor. Okay. If you have no more questions, I'll save the rest of my time. Thank you. Thank you. Briefly, Your Honor, counsel for the commission has focused this on paragraphs, I believe it's 43 and 44 of the 2015 order. And appropriately so. That's where the crux of this issue lies. First of all, I would highlight the language in the middle of paragraph 43 says, however, by definition, costs at the top or bottom of the middle 80% deviate significantly from the cost experience of other type lines. Don't they say something similar in 2010? Absolutely, Your Honor. And we can see they said these same things in 2010. So why? But those have never been subject to this court's review. But it wasn't challenged. It wasn't challenged. That was the rule. So we did all this tracing of the paragraphs to try to figure out why it was done when we finished, why it was done in 2010. And in paragraph 61 in 2010 says the middle 50% more appropriately adjusts the index levels for normal cost changes as opposed to the middle 80%, which by definition includes pipelines relatively far removed from the median. Yes, Your Honor. And then in paragraph 42 and 43 in this 2015, they seem to be following along with what they said in 2010. So the question was, have they really changed from 2010? My question was, were they mischaracterizing in this order what they said in 2010? But when you trace the paragraphs back, it doesn't look that way. It's not our argument, Your Honor, that they are mischaracterizing what they said in 2010. Our point is they made the same mistake in 2010 to the extent they were not expected to. But then how is this a change? This isn't a change. Well, it's a change from their policy in the last order from this commission that was reviewed by this court. Well, that's not the way we review that. They're entitled to establish precedent without our blessing. Well, Your Honor, when they make the change, I don't think it's the issue. It's that they made a change. I disagree with that. In both decisions, there was no explanation. I don't think that's right. Because there's an opportunity to get review the last time. Yeah, if they've changed the policy 30 years ago but it was unreviewed, you can't come here now and say, well, it was never reviewed. But we would have been somewhat anomalous to come to this court for review of that statement, which was essentially dictum in 2010 because they go on to say in the 2010 order, really the basis of our decision here is that we've got 76% of the barrel miles. We don't really need the middle 80 to get a good sample. So, in effect, they were saying we don't need to reach the question on the merits. I understand why. It's the thoughts we've expressed. That's why. We couldn't have really sought review of that, I don't think. I understand. But that's why I was asking a series of questions on put aside the change. Because I think ultimately your position, I think, is you all should be using the middle 80, not the middle 50, because the middle 80, that excludes the outliers and is a more accurate representation of what's going on. Is that fair? Yes. And let me highlight one issue that I think goes to the point of what we're making. The counsel for the commission stood up and said, look, a big problem with the middle 80 versus the middle 50 is that it's got this one big pipeline in it, Enbridge pipelines, 15% of the barrel miles. That really skews things. This is an example of the kind of thing the commission thought skewed things. But if you look in their own decision, footnote 87 of the 2015 decision, the second sentence, they're talking about Enbridge-Lakehead, very same pipeline. And these pipelines have a disproportionate effect because the Kahn methodology uses a weighted average in conjunction with a simple average to measure the central tendency. Although the size of these pipelines makes their data particularly relevant for assessing industry-wide barrel mile cost changes, the commission goes on to say that's not a good enough reason to have two separate indexes for prudent products. They've clearly recognized here that Enbridge-Lakehead is a good indicator of industry-wide cost changes, and yet their middle 50 rule is excluding pipelines like Enbridge, we would say arbitrarily. They haven't really given a reason why that's a good example of a statistical outlier. They've simply made the statement it's further from the median, whether they did it in 2010 or 2015, it's still a fundamental problem. They're saying the only thing wrong with the middle 80 is that it's further from the median. If you look at the chart we were referred to, you can see the distribution and the effect of choosing the middle 50 over the middle 80 will be a lower index every time. And that led to our concern that just as the commission did in the first index review where this court found that their methodology was designed to lead to a lower index, that's not a good enough reason for what they adopted. Are there no further questions? Okay. Thank you. The case is submitted.
judges: Kavanaugh, Srinivasan, Edwards